The PEOPLE of the State of
Colorado, Complainant,

v.

Orville A. KENELLY,
Attorney-Respondent.

No. 81SA366.

Supreme Court of Colorado,
En Banc.

March 15, 1982.

Philip A. Harley, Deputy Disciplinary Prosecutor, Denver, for complainant.

Charles F. Murray, Denver, for attorney-respondent.

HODGES, Chief Justice.

After hearing on a formal complaint alleging that Orville A. Kenelly, the attorney-respondent, was guilty of unprofessional conduct, the Grievance Committee of the Supreme Court concluded that the evidence before it clearly and convincingly established the allegations of the complaint. The Grievance Committee in its report recommended that the respondent's license to practice law be suspended. In response to this report, respondent filed exceptions which we have reviewed. We agree with the recommendation of the Grievance Committee and set the period of suspension at one year.

In its report, the Grievance Committee made detailed findings of fact regarding the allegations of the complaint. There follows a brief summary of these findings.

For several years prior to August 1978, the respondent represented Kyle Jarrett in several matters including traffic offenses and a minor marijuana case. In August 1978, Jarrett was severely injured as the result of a shooting at the home of his girlfriend. He claimed to the police that one Bertrand Jalbert shot him without reason. Jalbert, on the other hand, maintained that he shot in self-defense and that they struggled for possession of the gun. A large bag of marijuana was found by the police at the scene of the shooting.

As a result of this incident, Jalbert was charged with the commission of several serious felonies, including first-degree assault. In connection with the same incident, Jarrett, the client of the respondent, was charged with a felony drug offense. He retained the respondent to represent him in the criminal matter and also, to file a civil case for damages against Jalbert for the injuries he suffered as the result of the shooting.

At a subsequent preliminary hearing, the drug charge against Jarrett was dismissed. In connection with the criminal charges pending against Jalbert, the district attorney intended to call Jarrett as a witness.

Thereafter, Jarrett contacted Jalbert's attorney, who represented him in both the criminal case and the civil case pending against him. Jarrett suggested to Jalbert's

attorney that he would like to settle the civil matter and asked Jalbert's attorney to contact the respondent in order to work out the arrangements. Jarrett indicated in this phone call, that it would be to Jalbert's best interests to reach some kind of settlement. The attorney for Jalbert contacted the respondent and advised him of Jarrett's call. The respondent advised that he had authority from his client to settle the civil case for $25,000. The respondent also indicated that if his client, Kyle Jarrett, were to receive $5,000, Jarrett might find himself with the means "to end up in Switzerland or Jamaica, some place like that." Approximately five days thereafter, Jarrett again called Jalbert's attorney during which call he indicated that he wanted the matter resolved and that there was some urgency because the district attorney's office had been trying to subpoena him in connection with the criminal charges pending against Jalbert.

It was reported to the district attorney that any payment of Jarrett would be in consideration of Jarrett's unavailability for service of a subpoena or testimony at the forthcoming criminal trial of Jalbert.

After several other phone conversations between respondent and Jalbert's attorney, a settlement was consummated. Five thousand dollars ($5,000) which the police department had previously marked, was handed over to Jarrett by Jalbert. The respondent received $1500 from Jarrett in payment of attorney fees.

The Grievance Committee specifically found by clear and convincing evidence that the respondent knew from the beginning of settlement negotiations that the primary consideration for the payment by Jalbert to Kyle Jarrett was that Jarrett would make himself unavailable for the service of a subpoena or testimony at the criminal trial of Jalbert.

The report of the Grievance Committee noted that as a defense, the respondent contended that he was merely a passive bystander and that the illegal agreement was actually made between his client Jarrett and Jalbert. This contention was rejected by the Grievance Committee, which concluded from the evidence that the respondent knew of the illegal bargain from the beginning, and that he voluntarily aided and abetted the parties in consummating the transaction.

The Grievance Committee concluded that the respondent's conduct was in violation of Rule 241(B)(1), (2) and (4) of the Rules Relating to Discipline of Attorneys, because such conduct violates the accepted rules or standards of legal ethics and is in violation of the highest standards of honesty, justice and morality required of all who practice law in the state of Colorado. In addition, it was found that the respondent's conduct was prejudicial to the administration of justice and reflects his unfitness to practice law and was therefore in violation of DR1–102(A)(5) and (6).

If the legal system in this country is to survive, courts of law must have the testimony of necessary witnesses. An attorney, who is sworn to uphold the law and to aid in the administration of justice, has a high duty as an officer of the court to never participate in any scheme to obstruct the administration of justice or the judicial process. The respondent's misconduct in this case goes to the very heart of our legal system and therefore mandates a substantial sanction which will not only deter the respondent but will alert all attorneys that this kind of conduct will not be tolerated. In making its recommendations, the Grievance Committee noted that the respondent was acquitted of criminal charges for his participation in this transaction. Although an acquittal is not a bar to disciplinary action, it may be considered and was considered by the Grievance Committee together with other evidence of the respondent's exemplary activities in civic, family, and church affairs. We agree with the recommendation of the Grievance Committee that the respondent be suspended from the practice of law in the state of Colorado and we set the period of that suspension at one year.

It is further ordered that costs in the sum of $968.86 be assessed this respondent and that he be required to pay this amount to

the Clerk of the Supreme Court within sixty (60) days.